**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**DEBORAH M.,**

**Plaintiff,**

**v.** **1:20-CV-1600 (FJS)**

**KILOLO KIJAKAZI,**
***Acting Commissioner of Social Security*,**

**Defendant.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **AVARD LAW OFFICES**<br>P.O. Box 101110<br>Cape Coral, Florida 33910<br>Attorneys for Plaintiff | **CRAIG POLHEMUS, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203<br>Attorneys for Defendant | **DANIEL STICE TARABELLI, SAUSA** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Deborah M. brought this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for benefits. *See generally* Dkt. Nos. 1, 18. Pending before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 18, 23.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff brought her current claim for disability insurance benefits on November 2, 2016, alleging disability as of September 18, 2016. *See* Dkt. No. 24, Administrative Record ("AR"), at 321.[1,2] Plaintiff filed a timely request for a hearing on May 5, 2017. *See id.* at 221. An in-person hearing was held on May 2, 2019, before ALJ Michelle Marcus ("the ALJ") in Albany, New York. *See id.* at 142-196. Plaintiff's attorney, Mr. George Ferro from The Law Firm of Alex C. Dell, represented her at the hearing, and a vocational expert ("VE"), Ms. Cherie Plante, testified.[3] *See id.* at 142.

On July 24, 2019, the ALJ issued a written decision in which she made the following findings "[a]fter careful consideration of the entire record…"

1) Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2018."

2) Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of September 18, 2016 through her date last insured of December 31, 2018."

3) Plaintiff "had the following severe impairments: Crohn's disease and colitis; lumbar degenerative disc disease; and superior/bursal surface and interstitial tear of the shoulder."

4) Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of

---

[1] All references to page numbers in the Administrative Record are to the Bates Stamp numbers in the bottom right corner of those pages. All references to page numbers in other documents in the record are to the page numbers that the Court's ECF system generates, which appear in the top right corner of those pages.

[2] There appears to be a discrepancy between the date that the ALJ indicated that Plaintiff filed her current application for disability insurance benefits and the November 15, 2016 date on the application. *See* AR at 20, 321. However, this discrepancy does not impact the Court's decision in this case.

[3] Although spelled "Sherry Plant" in the hearing transcript, it appears from the expert's résumé that this is the proper spelling of her name. *See* AR at 142, 400.

the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1."

5) Plaintiff "had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that [Plaintiff] can stand or walk for twenty minutes at a time for four hours in an eight-hour workday, and sit for eight hours in an eight-hour workday with regular breaks. [Plaintiff] can lift or carry ten pounds occasionally and five pounds frequently. [Plaintiff] can frequently reach in all directions and frequently handle, finger, and feel. [Plaintiff] can occasionally bend, crouch, kneel, crawl, and climb ramps and stairs. However, [Plaintiff] cannot climb tall ladders, ropes, or scaffolds. [Plaintiff] can frequently perform the stooping required to go from a standing to seated position. [Plaintiff] also requires access to a bathroom within the workplace."

6) Plaintiff "was capable of performing past relevant work as an information clerk (DOT 237.637-022, SVP 4, sedentary per the DOT, light as actually performed) and service clerk (DOT 221.367-070, SVP 4, sedentary per the DOT, light as actually performed). This work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity."

7) Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 18, 2016, the alleged onset date, through December 31, 2018, the date last insured."

*See* AR at 22-34 (citations omitted).

The Appeals Council of the Social Security Administration granted Plaintiff's request for review on August 12, 2020. *See* AR at 315. On October 27, 2020, the Appeals Council issued a written decision in which it made the following findings:

1. Plaintiff "met the special earnings requirement of the Act on September 18, 2016, the date [Plaintiff] stated she became unable to work and met them through December 31, 2019."

2. Plaintiff "has not engaged in substantial gainful activity since September 18, 2016."

3. Plaintiff "has the following severe impairments: Crohn's disease and colitis; lumbar degenerative disc disease; and superior/bursal

surface and interstitial tear of the shoulder, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1."

4. Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that [Plaintiff] can stand or walk for 20 minutes at a time for 4 hours in an 8-hour workday, and sit for 8 hours in an 8-hour workday with regular breaks. [Plaintiff] can lift or carry 10 pounds occasionally and 5 pounds frequently. [Plaintiff] can frequently reach in all directions and frequently handle, finger and feel. [Plaintiff] can occasionally bend, crouch, kneel, crawl and climb ramps and stairs. However, [Plaintiff] cannot climb tall ladders, ropes, or scaffolds. [Plaintiff] can frequently perform the stooping required to go from a standing to seated position[ ]. [Plaintiff] also requires access to a bathroom within the workplace."

5. Plaintiff's "alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this decision."

6. "The limitations on [Plaintiff's] ability to perform work-related activities as set forth in Finding [4] do not preclude the performance of past relevant work as information clerk (DOT 237.367-022) and service clerk (DOT 221.367-070). Therefore, [Plaintiff's] combination of impairments does not preclude the performance of past relevant work (20 CFR 404.1520(e)). [Plaintiff] is capable of performing her past relevant work as generally performed."

7. Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 18, 2016, the alleged onset date, through July 24, 2019, the date of the Administrative Law Judge's decision."

*See* AR at 7-8.

Plaintiff then commenced this action on December 23, 2020, filing a supporting brief on October 20, 2021. *See* Dkt. Nos. 1, 18. Defendant filed a responsive brief on February 4, 2022. *See* Dkt. No. 23. In support of her motion, Plaintiff argues that the ALJ and Appeals Council (1) did not have constitutional authority to decide Plaintiff's claim; (2) erred in determining

Plaintiff's residual functional capacity ("RFC"); and (3) erred in concluding that Plaintiff was capable of performing past relevant work at Step 4. *See generally* Dkt. No. 13 at 3, 10-13.

## III. DISCUSSION

### A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). Accordingly, a reviewing court "'may not substitute [its] own judgment for that of the [Commissioner], even if [it] might justifiably have reached a different result upon a de novo review.'" *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 52 (2d Cir. 2016) (Summary Order) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)). In other words, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court may] reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (quotation and other citation omitted).

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability "to engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To

determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

1) The ALJ first determines whether the claimant is currently engaged in SGA. *See* C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).

2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*

3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (citation omitted).

**B. Whether the ALJ and Appeals Council had constitutional authority to decide Plaintiff's claim**

As a threshold matter, Plaintiff complains that Andrew Saul, as the former Commissioner of Social Security, was removable only for cause and served a longer term than the President of the United States; and, thus, the "SSA's structure is unconstitutional as it

violates separation of powers." *See* Dkt. No. 18 at 30-31 (citing *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020)). Plaintiff argues that the ALJ's delegation of authority in this case came from Mr. Saul; and, therefore, it is constitutionally defective. *See id.* at 31. Similarly, Plaintiff contends that the ALJ decided her case "under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules." *See id.* Plaintiff asserts that this is "just as true with respect to SSA's Appeals Council judges[.]" *See id.* Plaintiff argues that the Biden Administration apparently recognized the constitutional defect as it fired Mr. Saul under the authority in *Seila Law*. *See id.* at 32 (citing *Seila Law LLC*, 140 S. Ct. at 2204). Accordingly, Plaintiff requests that the Court remand this matter for a *de novo* hearing before a new ALJ "who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so." *See id.* at 33 (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018)).

The Government agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. *See* Dkt. No. 23 at 5. However, the Government responds that such conclusion does not support setting aside an unfavorable SSA disability benefits determination. *See id.* According to the Government, as the Supreme Court explained in *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm. *See id.* The Government further contends that a variety of other legal doctrines – harmless error, de facto officer, the rule of necessity, and broad prudential considerations – reinforce that Plaintiff is not entitled to relief simply because 42 U.S.C. § 902(a)(3) violates the separation of powers. *See id.* at 6-16.

Courts in this District have recently rejected identical arguments to the one Plaintiff makes here. *See Betty Jean B. v. Kijakazi*, No. 6:21-CV-0125 (ML), 2022 WL 873827, *5-*7 (N.D.N.Y. Mar. 24, 2022) (Lovric, M.J.); *Juliana Jolean A. v. Kijakazi*, No. 5:20-cv-1268 (BKS), 2022 WL 595361, *2-*4 (N.D.N.Y. Feb. 28, 2022) (Sannes, J.). Just as the parties did here, those courts noted that, "[i]n the wake of *Seila Law* and *Collins*, many district courts have assumed or held that the restriction on the President's power to remove the Commissioner violates the separation of powers." *Betty Jean B.*, 2022 WL 873827, at *5 (citing, *e.g.*, *Kasey V. v. Comm'r of Soc. Sec.*, 20-CV-6153, 2022 WL 102048, at *5 (W.D. Wash. Jan. 11, 2022) (parenthetical omitted); *Katrina R. v. Comm'r of Soc. Sec.*, 21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) (parenthetical omitted), *report-recommendation adopted by* 2022 WL 456693 (S.D. Ohio Feb. 15, 2022); *see also* Office of Legal Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *7 (July 8, 2021) (parenthetical omitted)); *see Juliana Jolean A.*, 2022 WL 595361, at *3. Nonetheless, those courts found that the plaintiffs had not stated cognizable constitutional claims because, "even assuming the Commissioner's statutory tenure protection is unconstitutional, Plaintiff has not alleged facts which would entitle her to a remand for a new hearing or any other relief." *Juliana Jolean A.*, 2022 WL 595361, at *4; *Betty Jean B.*, 2022 WL 873827, at *6.

The Court comes to the same conclusion with respect to Plaintiff in this case. Her complaint does not allege any connection between the removal restriction and the ALJ's and Appeals Council's decisions denying her application for disability insurance benefits. *See* Dkt. No. 1. Furthermore, although Plaintiff argues that the unconstitutional restriction on the President's ability to remove the Commissioner creates a defect in the Commissioner's authority – and, by extension, that of the ALJ and the Appeals Council – under *Collins*, courts have found

that, "where the officers in question are 'properly *appointed*,' 'there is no reason to regard any of [their] actions' as 'void.'" *Juliana Jolean A.*, 2022 WL 595361, at *4 (quoting *Collins*, 141 S. Ct. at 1787, 1788 n.23 ([holding that] "[t]he unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office.")). "In short, 'under *Collins*, actions taken by properly appointed officials are not void.'" *Id.* (quoting *Satterthwaite v. Kijakazi*, No. 20-cv-724, 2022 WL 468946, at *5, 2022 U.S. Dist. LEXIS 27204 (W.D.N.C. Feb. 15, 2022)). Plaintiff has not alleged that Mr. Saul was improperly appointed; she merely challenges the statutory provision surrounding his removal.

Without alleging any connection between the removal restriction and the unfavorable decision denying her claim for benefits, the Court further finds that Plaintiff has not alleged that the unconstitutional removal restriction itself inflicted "compensable harm." *Betty Jean B.*, 2022 WL 873827, at *6 (citing, *cf.*, *Collins*, 141 S. Ct. at 1789). "Courts considering similar changes have uniformly rejected requests for remand." *Id.* (citing *Katrina R.*, 2022 WL 190055, at *5 (parenthetical omitted); *White v. Comm'r of Soc. Sec.*, 20-CV-1695, 2022 WL 463318, at *7 (E.D. Cal. Feb. 15, 2022) (parenthetical omitted); *Satterthwaite*, 2022 WL 468946, at *6 (parenthetical omitted); *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, 21-CV-5207, 2021 WL 5177363, at *7-8 (W.D. Wash. Nov. 8, 2021) (parenthetical omitted). *See also Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ([remarking, in response to the changes following *Seila Law*,] "I doubt the mass of SSA decisions – which would not concern the President at all – would need to be undone.")). Accordingly, because Plaintiff has not plausibly alleged any connection between the denial of her claim and the alleged unconstitutional statutory tenure protection afforded to the Commissioner, the Court rejects Plaintiff's contention that she is entitled to a *de novo* hearing on her claim.

**C. The agency's RFC finding**

Plaintiff contends that the ALJ's and Appeals Council's RFC findings are not supported by the substantial evidence in the record. *See* Dkt. No. 18 at 25-30. According to Plaintiff, the ALJ and Appeals Council erred in failing to find Plaintiff's mental impairments severe and in failing to include any relevant limitations in the RFC. *See id.* at 25-28. Specifically, in setting the RFC, Plaintiff argues that the ALJ failed to properly consider opinions from Dr. Brett Hartman, Psy.D. *See id.* at 27-28. Plaintiff further argues that the ALJ and Appeals Council erred in failing to include in her RFC absences due to her physical impairments or to quantify the frequency and duration during which time she could use the restroom. *See id.* at 28-30. The Court addresses each of these issues in turn.

***1. Plaintiff's alleged mental impairments***

With respect to her mental impairments, Plaintiff claims that she has been assessed with bipolar disorder, "rule out" unspecified bipolar and related disorder, probable or possible obsessive-compulsive disorder, major depressive disorder recurrent, depression, anxiety, panic disorder, and urinary bladder disorder with panic attacks. *See id.* at 25-26. According to Plaintiff, consultative examining psychologist Dr. Hartman opined that she had mild difficulty making appropriate decisions, mild to moderate problems relating adequately with others, and moderate difficulty dealing appropriately with normal stressors of life. *See id.* at 26 (citing AR at 738). Plaintiff asserts that the ALJ and Appeals Council did not find her mental impairments severe and did not include any relevant limitations in her RFC. *See id.* Plaintiff argues that failure to find her mental impairments severe may have been harmless error, but it was not

harmless for the ALJ and Appeals Council to fail to include relevant mental limitations in her RFC. *See id.*

Plaintiff contends that, in setting the RFC, the ALJ failed to properly consider Dr. Hartman's opinions, including that she had moderate difficulty dealing appropriately with the normal stressors of life, which, among other things, appeared consistent with her psychiatric problems, and that he gave her a fair to guarded prognosis based on her combination of multiple symptoms. *See id.* at 27. In particular, Plaintiff argues that the ALJ erred in giving great weight to Dr. Hartman's opinion "to the extent that it is consistent with the residual functional capacity" but less weight to the other portions of his opinion regarding her moderate and mild-to-moderate limitations. *See id.* (citing AR at 29). Plaintiff asserts that the ALJ gave portions of Dr. Hartman's opinion less weight because Plaintiff was "pleasant" and "cooperative" during the exam, the evidence suggests that she became less social due to physical problems "rather than any significant mental health issues," and she had intact attention and concentration. *See id.* at 28 (citing AR at 29). However, Plaintiff argues that these reasons do not support giving Dr. Hartman's opinions regarding her prognosis and difficulties dealing with stress less weight. *See id.* Accordingly, in failing to include limitations related to her mental health impairments in her RFC, Plaintiff contends that the ALJ and the Appeals Council rendered decisions that were unsupported by substantial evidence. *See id.*

As noted in Step 2, above, to be found disabled, a claimant "must have a severe impairment." 20 C.F.R. § 416.920(c). If a claimant does "not have any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," then she does not have a severe impairment and is not disabled. *Id.* "Although the Second Circuit has held that this step is limited to 'screen[ing] out de minimis

claims,' *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995), the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Cuenca v. Comm'r of Soc. Sec.*, No. 3:14-CV-0859 (GTS/WBC), 2016 WL 2865726, *3 (N.D.N.Y. Apr. 19, 2016) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)), *adopted by* 2016 WL 2858858 (N.D.N.Y. May 16, 2016). "Indeed, a 'finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have "no more than a minimal effect on an individual's ability to work."'" *Id.* at *4 (quoting *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S. Ct. 2287 (1987))). Furthermore, "[i]t is axiomatic that the ALJ is required to consider a plaintiff's mental impairments, even if not severe, in formulating the RFC." *Rookey v. Comm'r of Soc. Sec.*, No. 7:14-cv-914 (GLS), 2015 WL 5709216, *4 (N.D.N.Y. Sept. 29, 2015) (Sharpe, J.) (citing 20 C.F.R. 404.1545(a)(2)) (other citations omitted). If an ALJ finds that a non-severe mental impairment causes mild or moderate limitations, then the ALJ must account for those limitations in the RFC determination. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (citing 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2)); *see also Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *accord MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, *3 (W.D.N.Y. July 11, 2019).

During Dr. Hartman's psychiatric evaluation, Plaintiff allegedly reported that she had difficulty falling asleep due to racing thoughts, she had been struggling with depression for several years, and she took time off of work due to anxiety and physical problems. *See* AR at 736. Plaintiff acknowledged sadness, social isolation, agitation, low energy, and crying spells,

as well as a general loss of interest and frequent irritability. *See id.* She reportedly told Dr. Hartman that she got overwhelmed easily, had concentration problems, and often "tune[d] people out and d[id] not pay attention in conversations." *See id.* Plaintiff reported that she felt like she was "living in a fog." *See id.* She had never been suicidal nor homicidal, but she reported to Dr. Hartman that she had panic attacks at least once per week, which included palpitations, nausea, breathing problems, and trembling. *See id.* Plaintiff told Dr. Hartman that she felt an urgent need to escape stressful situations, including crowds and family gatherings, but sometimes her panic attacks were random. *See id.* Plaintiff reported sporadic manic episodes in which she became very talkative, spent money recklessly, and would have "flight of ideas" but very little follow through. *See id.* She told Dr. Hartman that she had a tendency toward compulsive cleaning, but she claimed that she was frustrated because of her back; she wished that she could clean things but her back would hurt too much. *See id.*

With respect to her modes of living, Plaintiff reported that she was able to dress, bathe, and groom herself. *See id.* at 738. She could do her own cooking, cleaning, and laundry, but she took things very slowly and took frequent breaks. *See id.* She stated that she went shopping with her husband, and he helped her with money management. *See id.* Plaintiff reported that she rarely drove, she had no contact with friends, but she got along well with her family. *See id.* She told Dr. Hartman that she spent a lot of her day sitting in a recliner watching television, but she used to be very acting in bowling, seeking friends, and going out. *See id.*

Upon examination, Dr. Hartman found Plaintiff to be a "cooperative, pleasant, yet anxious individual" with an anxious affect, dysphoric mood, and alert and oriented x3. *See id.* at 737. Dr. Hartman determined that Plaintiff's attention and concentration appeared to be

generally intact as well as her recent and remote memory skills. *See id.* In his medical source statement, Dr. Hartman concluded that Plaintiff was able to follow and understand simple directions and perform simple tasks. *See id.* at 738. He found that she had a fair ability to maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. *See id.* Dr. Hartman determined that Plaintiff had mild difficulty making appropriate decisions and had "mild to moderate problems" relating adequately with others. *See id.* He also concluded that Plaintiff had moderate difficulty dealing appropriately with the normal stressors of life. *See id.* Dr. Hartman concluded that each of these limitations "appear[ed] consistent with psychiatric problems." *See id.*[4] Ultimately, Dr. Hartman gave Plaintiff a fair to guarded prognosis "given the combination of multiple symptoms," and he recommended that she take part in regular individual counseling and have her medication reevaluated. *See id.*

The ALJ found that Plaintiff's mental health symptoms were non-severe and discussed them when coming to her RFC finding. *See id.* at 29. With respect to Dr. Hartman's opinion, the ALJ gave it "great weight to the extent that it [wa]s consistent with the [RFC]." *See id.* However, the ALJ noted, "with respect to the other portions of his opinion regarding moderate, and mild to moderate limitations," she afforded those statements "less weight." *See id.* For example, the ALJ indicated that Dr. Hartman found that Plaintiff had mild to moderate problems relating adequately with others; yet, in his examination of her, he remarked that

[4] Dr. Hartman ultimately diagnosed Plaintiff with "urinary bladder disorder with panic attacks." *See* AR at 738. At Plaintiff's hearing, the ALJ remarked that "urinary bladder disorder with panic attacks . . . can't possibly be what [Dr. Hartman] meant to say." *See* AR at 169. The ALJ stated that she was unsure if they could get a corrected opinion, but she would "look into" it. *See id.* at 170. There is no indication in the ALJ's decision that she looked into it or discovered with what condition Dr. Hartman meant to diagnose Plaintiff.

Plaintiff was "pleasant" and "cooperative" during the exam. *See id.* The ALJ further stated that, although Plaintiff reported that she used to be very active bowling and hanging out with friends, her testimony and the evidence in the record supported a finding that she became less social "due to physical problems rather than any significant mental health issues." *See id.* With respect to Dr. Hartman's conclusion that Plaintiff had moderate difficulty dealing appropriately with stress, the ALJ also found that it was "not supported by the record." *See id.* Specifically, she pointed to Dr. Hartman's indication that, despite Plaintiff's anxiety throughout the exam, she had intact attention and concentration and recent and remote memory skills. *See id.*

"'There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations . . . .'" *Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, *10 (N.D.N.Y. Sept. 13, 2016) (Hummel, M.J.) (quoting *Pellam v. Astrue*, 508 Fed. Appx. 87, 89-90 (2d Cir. 2013) [(summary order)]). "Indeed, an ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.'" *Id.* (quoting *Viteritti v. Colvin*, No. 14-6760 (DRH), 2016 WL 4385917, at *11 (E.D.N.Y. Aug. 17, 2016) (citing *Pellam*, 508 Fed. Appx. at 89)). "This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement setting forth '[functional] limitations.'" *Id.* (quoting *Pellam*, 208 Fed. Appx. at 90).

In this case, not only did the ALJ conclude that Plaintiff's mental health symptoms were non-severe, but she also rejected Dr. Hartman's opinion to the extent that she found that those symptoms caused Plaintiff any mild or moderate limitations. The ALJ rejected those limitations as inconsistent with the evidence in the record, and she fully explained her reasoning, including that Plaintiff was pleasant and cooperative during exams, had intact concentration, attention,

and memory, and stopped social activities like bowling due to her physical limitations. The Court therefore finds that, by explaining why she discredited portions of the Dr. Hartman's opinion that were inconsistent with the record, the ALJ did not err in discrediting them. *See Carl D. v. Comm'r of Soc. Sec.*, No. 5:17-cv-01114 (TWD), 2019 WL 1115704, *10 (N.D.N.Y. Mar. 11, 2019) (Dancks, M.J.). Furthermore, since the ALJ did not find that there were any functional limitations associated with Plaintiff's non-severe mental health symptoms that would affect her capacity to work, the ALJ was not required to take those symptoms into account or create any restrictions when determining Plaintiff's RFC. *See Parker-Grose*, 462 F. App'x at 18. Accordingly, the Court finds that the ALJ did not err in creating an RFC for Plaintiff that did not reflect mental health limitations.

***2. Absences and breaks due to physical impairments***

Plaintiff next contends that the ALJ and Appeals Council erred in failing to include absences, time off task, and frequency and duration of restroom visits in their RFCs. *See* Dkt. No. 18 at 28. Plaintiff points to the fact that, in a 34-month period, she was treated on 49 days for her Crohn's disease and colitis. *See id.* at 29. Plaintiff asserts that her flare-ups were "completely unpredictable," and her employer, Schenectady County, notified her that her sick leave accruals would be exhausted seven months before her alleged onset date, she had exceeded her authorized Family and Medical Leave Act ("FMLA") leave, and the County ultimately terminated her for excessive and extended absences. *See id.* Nonetheless, Plaintiff argues, the ALJ erred when she neglected to ask the VE about employer tolerance for absences or for time off-task and when she failed to include Plaintiff's need for excessive bathroom breaks and frequent medical treatment in the RFC. *See id.* at 29-30. Defendant responds that

many of Plaintiff's medical appointments were of the non-emergency, outpatient variety; and, therefore, the ALJ correctly concluded that Plaintiff failed to set forth facts or medical opinions revealing that she required treatment on a regular schedule. *See* Dkt. No. 23 at 19. Defendant also contends that the ALJ properly rejected the notion that her colitis and Crohn's disease necessitated excessive restroom breaks. *See id.* at 21.

"In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations." *Lynn J. v. Kijakazi*, No. 3:20-CV-1294 (ATB), 2022 WL 912981, *6 (N.D.N.Y. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1545, 416.945) (other citations omitted). "An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities." *Id.* (citations omitted). "The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence." *Id.* (citing *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7)).

In her decision, the ALJ noted that Plaintiff reported that she had a history of digestive disorders and that her condition had worsened overtime. *See* AR at 26. Although Plaintiff conceded that her pain varied, she testified that she experienced frequent "flare ups" of her colitis and Crohn's disease, manifested by various symptoms such as diarrhea and severe pain. *See id.* The ALJ found that these complaints about the intensity, persistence, and limiting effects of these diseases were "inconsistent with clinical observations and testing." *See id.* at 27. The ALJ pointed to Plaintiff's treatment notes in which she denied bloody diarrhea, mucus

in her stool, fever, chills, and Dr. Morerer's conclusion that she had "only an acute episode of abdominal pain and diarrhea that was likely related to an infectious etiology." *See id.* In April 2017, Plaintiff reported that she "'never had an exacerbation in many years,'" and she was able to continue her daily activities with no issues. *See id.* (quoting AR at 1129). The ALJ also noted that, in Plaintiff's January 2019 treatment notes, her Crohn's disease was "'intermittently symptomatic,'" and Plaintiff denied gastrointestinal symptoms during her physical examination. *See id.* (quoting AR at 1073).

The ALJ further found that Plaintiff's subjective complaints were "inconsistent with objective laboratory testing," such as her June 2018 colonoscopy that revealed only nonbleeding internal and external hemorrhoids with normal mucosa in the entire colon and a "normal colon." *See id.* Random colon biopsies were negative for microscopic colitis or ileitis in the terminal ileum. *See id.* The ALJ pointed to an April 2018 CT scan in which there was no evidence of appendicitis, diverticulitis, obstruction involving the small bowel biliary system or urinary system, no evidence of colonic wall thickening, no abdominal inflammatory processes or mass, no evidence of obstructive pattern or dilated bowel loops, and only mild to moderate retained stool in the colon. *See id.* (citing AR, Ex. 9F). The ALJ also noted that Plaintiff had multiple abdominal series reports that were unremarkable and revealed normal bowel gas patterns with no evidence of renal calculi, and an ultrasound of her abdomen revealed no ascites. *See id.*

Although Plaintiff had a mildly distended abdomen during one examination in April 2017, the ALJ remarked that Plaintiff was reported to have good bowel sounds and no masses. *See id.* Furthermore, Plaintiff's June 2018 treatment notes revealed that she complained of having up to twenty bowel movements per day with lower quadrant cramping; but, upon physical examination, Plaintiff's abdomen was soft and nondistended. *See id.* Despite some

mid-abdominal discomfort and tenderness, the ALJ noted that there was no evidence of rebound, guarding, or rigidity, and she had normoactive bowel sounds. *See id.* The ALJ also pointed to the fact that Plaintiff did not take any medication for her abdominal pain. *See id.* Finally, with respect to the objective laboratory testing, the ALJ noted that it "consistently revealed no evidence of obstruction, perforation, or abscess." There was no leukocytosis, no significant wall thickening, small bowel distention, intestinal mass or stricture, mesenteric inflammatory process, or omental thickening. *See id.* at 28. At most, the ALJ noted, "objective laboratory testing revealed 'questionable [and] very mild colitis[.]'" *See id.* (quoting AR at 1194). Based on these findings, the ALJ included in Plaintiff's RFC that she "require[d] access to a bathroom within the workplace." *See id.* at 26.

As stated above, an ALJ must make an RFC determination after considering both the medical and non-medical evidence. *See Lynn J.*, 2022 WL 912981, at *6. The ALJ in this case similarly noted this, indicating that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, [the ALJ] must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities." *See* AR at 26. Nonetheless, it appears that the ALJ did not consider the non-medical evidence included in notices from Plaintiff's employer regarding the fact that she exceeded her sick and FMLA leave accruals and that she was ultimately terminated for excessive and extended absences stemming from an alleged disability. *See id.* at 43-126.

For example, on October 21, 2016, approximately one month after Plaintiff's alleged onset date of September 18, 2016, Plaintiff's employer notified her that she had exceeded her FMLA leave. *See id.* at 96. The letter indicated that Plaintiff had been continuously absent

from August 18, 2016 through October 17, 2016, and then she was absent against October 19, 2016 through October 21, 2016. *See id.* According to the letter, Plaintiff had been approved for FMLA leave due to "episodic flare-ups of up to 2 days in duration, occurring every 2-3 months." *See id.* Plaintiff had received a similar notice on August 23, 2016 about her absences from July 28, 2016 through August 18, 2016. *See id.* at 94. Although it pre-dated her alleged onset date, Plaintiff also submitted into the record a notice from her employer on February 5, 2016, which indicated that she was last able to work on January 27, 2016, and her remaining sick accruals would be exhausted on February 12, 2016. *See id.* at 85.

Most notably, on January 26, 2018, Plaintiff's employer notified her of its intent to terminate her employment on the basis that, since October 19, 2016, she had been "continuously absent from work and unable to perform the duties of [her] position as a Facilities Aide by reason of a disability other than a disability resulting from occupational injury or disease as defined in the workmen's compensation law." *See id.* at 122. According to Plaintiff's employer, in accordance with Civil Service Law § 73, "an employee who has been continuously absent from work and unable to perform the duties of his position for one year or more as a result [of] such a disability may be terminated and his position may be filled by a permanent appointment." *See id.* at 122, 125 (citing N.Y. Civil Serv. L. § 73).

Of the various absences from work that Plaintiff referenced in her memorandum of law, many of them pertained to her Crohn's disease, colitis, or other gastrointestinal distress. For example, in the week following her alleged onset date in September 2016, Plaintiff complained of having diarrhea and five to six bowel movements per day. *See id.* at 643. She further complained of and was hospitalized for abdominal pain in November and December 2016. *See id.* at 1209, 1215, 1258. In April 2017, Plaintiff was again hospitalized with abdominal

discomfort, bloating, diarrhea, and abdominal distention. *See id.* at 1125, 1129, 1197. In December 2017, Plaintiff continued to complain of bloating, a distended stomach, and diarrhea. *See id.* at 1105, 1107. Plaintiff was also treated three times in March 2018 for symptoms relating to Crohn's disease and colitis, including abdominal pain, loose stools, and diarrhea. *See id.* at 897, 1087, 1098. The next month, April 2018, Plaintiff alleged that she suffered from abdominal discomfort. *See id.* at 744. She also had diarrhea, lower abdominal cramping, and complained of up to 20 bowel movements daily. *See id.* at 740-741.

Furthermore, with respect to her Crohn's disease, Plaintiff testified that she had a monthly flare-up, and if it was "mild," the diarrhea "isn't as bad," but her pain was "still excruciating." *See id.* at 159-160. When her flare-ups were severe, which Plaintiff reported occurred twice per year, she would end up in the hospital. *See id.* at 160-161. Plaintiff estimated that, when she was working, she called out of work four to five times per month because of her depression, panic attacks, and Crohn's disease. *See id.* at 169. She stated that she was written up "a couple of times" for her absences when she worked for Schenectady County, and there were no other disciplinary issues that led to her write-ups. *See id.*

The ALJ did not refer to Plaintiff's employer's notices in her decision, nor did the Appeals Council address them in its decision, even though it appears to the Court that this non-medical evidence tends to support Plaintiff's subjective complaints regarding her Crohn's disease and colitis. There also appears to the Court to be evidence in the medical record supporting Plaintiff's recurrent treatment and hospitalizations for gastrointestinal distress, which the ALJ rejected in favor of conflicting medical evidence without discussion. Furthermore, as Plaintiff points out, the ALJ did not ask the VE about employers' tolerance for absenteeism and time off-task for frequent restroom breaks despite finding that Plaintiff had severe

gastrointestinal impairments. This is particularly problematic since this evidence shows that Plaintiff was terminated for her absenteeism; yet, at Step 4, the ALJ found that Plaintiff was capable of doing her past relevant work. By only concluding that Plaintiff "requires access to a bathroom within the workplace," the ALJ apparently concluded that Plaintiff would not need to be absent from work on a regular basis. *See Aurilio v. Berryhill*, No. 3:18-cv-587 (MPS), 2019 WL 4438196, *8 (D. Conn. Sept. 16, 2019). Without any explanation as to why the ALJ evidently concluded that an RFC without a significant level of absenteeism was justified, the Court is left to conclude that the ALJ erred in coming to Plaintiff's RFC, and that finding was not supported by the substantial evidence in the record. Remand is therefore appropriate for the agency to consider the evidence regarding Plaintiff's absenteeism and off-task behavior in taking frequent restroom breaks. To do so, the ALJ should consult with a VE about employers' tolerance for such absenteeism and off-task conduct.

**D. The agency's finding at Step 4**

Plaintiff lastly contends that, despite the lack of VE testimony or evidence supporting such finding, the ALJ and Appeals Council found that she was capable of performing past relevant work as an information clerk and a service clerk as generally performed. *See* Dkt. No. 18 at 23. According to Plaintiff, both of these positions are sedentary with job duties that occasionally require walking and standing. *See id.* (citing SSR 83-10). Plaintiff notes that the RFC limits her to standing or walking for 20 minutes at a time, and no evidence was presented regarding whether information clerks and service clerks have to stand or walk for more than 20 minutes at a time. *See id.* Plaintiff argues that, had the ALJ asked the VE whether Plaintiff could perform her past work – either as actually performed or as generally performed – she and

the Appeals Council would have been able to rely upon the VE's response as providing substantial evidence of her ability to perform such work. *See id.* at 24. However, without a VE's response to a hypothetical question on this basis, Plaintiff asserts that the ALJ's and Appeals Council's findings at Step 4 could not be based on substantial evidence. *See id.* Plaintiff further contends that this error was not harmless because the ALJ did not identify any transferable job skills; and, if she could not perform her past relevant work, she would have been found disabled under the Medical-Vocational Guidelines rule 201.14 due to her age, education, and past work experience. *See id.*

Plaintiff also argues that her position as a facilities aide was a "composite job" because she was responsible for payroll, bill paying, handling maintenance staff, working between two buildings, putting orders away, screening clients, managing staff, and monitoring purchases from internal and external vendors. *See id.* at 25. Plaintiff contends that, under SSR 82-61, the VE should have analyzed that work as a composite job to determine how it was actually performed. *See id.*

Finally, Plaintiff notes that, at the hearing, the ALJ recognized the possibility of a supplemental hearing or sending interrogatories to a VE. *See id.* (citing AR at 185). However, Plaintiff asserts, the ALJ chose not to do either, even though "without relevant vocational evidence there is no basis to determine whether the jobs of information clerk and service clerk require standing or walking in excess of 20 minutes at a time." *See id.* Without this information, Plaintiff contends that the ALJ and Appeals Council issued decisions that were unsupported by the evidence. *See id.*

"'While an expert is often called upon to explain the requirements of particular jobs . . . step four of the analysis does not require that an ALJ consult an expert.'" *Rebecca H. v.*

*Comm'r of Soc. Sec.*, No. 6:20-CV-01058 (TWD), 2022 WL 293854, *8 (N.D.N.Y. Feb. 1, 2022) (Dancks, M.J.) (quoting *Petrie*, 412 F. App'x at 409; *Hackett v. Comm'r of Soc. Sec.*, No. 5:16-692, 2017 WL 1373893, at *6 (N.D.N.Y. Apr. 13, 2017) ([finding that] "[a]t step four of the disability analysis, the ALJ has the option to rely on [vocational expert] testimony")). Although vocational expert testimony is not necessary, given the Court's finding above and recommendation that the ALJ consult with a VE regarding accepted absenteeism and off-task behavior, the Court further concludes that the ALJ should question the VE about the expected amount of standing or walking required of an information clerk or service clerk both as a sedentary position as classified in the Dictionary of Occupational Titles and with an exertional level of light work as actually performed. *See* AR at 181-183.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No. 18, is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 23, is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** pursuant to sentence four of the Act to the Commissioner for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: June 23, 2022
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge